**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| **BELAIR ELECTRONICS, INC.,** | |
| **Plaintiff,** | **Case No.: 1:25-cv-02065** |
| **v.** | **JURY TRIAL DEMANDED** |
| **AT&T INC. and AT&T SERVICES, INC.,** | |
| **Defendants.** | |

<u>**COMPLAINT FOR PATENT INFRINGEMENT**</u>

Plaintiff BelAir Electronics, Inc. ("BelAir" or "Plaintiff") complains of Defendants AT&T Inc. and AT&T Services, Inc. (collectively, "AT&T" or "Defendants") as follows:

**NATURE OF LAWSUIT**

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

**THE PARTIES**

2.      Plaintiff BelAir Electronics, Inc. is an Illinois corporation with its principal place of business at 5723 Antler Lane, Westmont, Illinois 60559.

3.      BelAir is the named assignee of, owns all right, title and interest in, and has standing to sue for infringement of United States Patent No. 7,194,291, entitled "Protective Mask of Mobile Phone," which issued on March 20, 2007 (the "'291 Patent") (a true and correct copy is attached as Exhibit A); United States Patent No. 7,941,195, entitled "Protective Mask of Mobile Phone," which issued on May 10, 2011 (the "'195 Patent") (a true and correct copy is attached as Exhibit B); and United States Patent No. 10,097,676, entitled "Protective Mask of Mobile Phone," which

issued on October 9, 2018 (the "'676 Patent") (a true and correct copy is attached as Exhibit C) (collectively, the "Asserted Patents").

4.     BelAir has the exclusive right to license, enforce and collect all past damages for infringement of the Asserted Patents for the period starting six years prior to the filing date of this suit (December 17, 2019) through the expirations of the Asserted Patents. BelAir also has standing to sue for infringement of the Asserted Patents.

5.     The Asserted Patents' claims are currently being challenged at the United States Patent and Trademark Office ("USPTO") pursuant to *ex parte* reexamination ("EPR") proceedings filed by a third party. Accordingly, BelAir brings this action to preserve remaining damages under the Patents Act, but intends to promptly seek stay of these proceedings until resolution of the EPRs.

6.     Upon information and belief, Defendant AT&T Services, Inc. owns and operates the websites att.com and carsonandquinn.com.

7.     Upon information and belief, Defendant AT&T Inc. is the parent company, wholly owning affiliated entities of "AT&T" brick and mortar retail stores and the att.com and carsonandquinn.com domains.

8.     Defendants are sellers and distributors of mobile device cases with the "Carson & Quinn" and "CQ X Carson & Quinn" brand names.

9.     Upon information and belief, Defendants have numerous brick and mortar stores in Texas with at least 15 locations near Austin, Texas:











(See, https://www.att.com/stores/, last accessed on December 11, 2025). Upon information and belief, Defendants are hiring for numerous positions near Austin, Texas:



(See, https://www.att.jobs/search-jobs/Austin%2C%20TX/117/4/6252001-4736286-4737316-4671654/30x26715/-97x74306/50/2, last accessed on December 11, 2025). Upon information and belief, Defendants' principal corporate office is in Texas:



(See, https://investors.att.com/resources/contacts, last accessed on December 11, 2025).

Additionally, Defendants are registered to do business in Texas and have registered agents located in Texas incident to such registrations:





(See, https://direct.sos.state.tx.us/acct/acct-login.asp, last accessed on December 11, 2025 – Texas Secretary of State registration data).

10.    In furtherance of Plaintiff's review and analysis prior to filing this action, Plaintiff studied Defendants' publicly-available product literature and, among other things, purchased "Carson & Quinn Leather Case - iPhone 11" and "Carson & Quinn Leaves Case - iPhone 12 mini" cases for assessment as representative of Defendants' infringing products (as identified in Exhibit D and Exhibit E and detailed further below). The infringing products detailed, and all substantially similar products, are collectively referred to as the "Accused Products" as detailed further below.

11.    Defendants primarily advertised and sold Accused Products online (see https://www.att.com/, https://www.carsonandquinn.com/, and related urls in the att.com and carsonandquinn.com domains) and which were available to customers in this Judicial District and at AT&T brick and mortar retail stores including those located in this Judicial District.

12.    Defendants offered for sale and sold the Accused Products for mobile devices throughout the United States and this Judicial District.

## JURISDICTION AND VENUE

13.     BelAir's claims for patent infringement against Defendants arise under the patent laws of the United States including 35 U.S.C. §§ 271 and 281. This Court has original and exclusive subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14.     Defendants own, operate, and conduct business in the state of Texas and direct advertisements at residents of Texas – which were covered by claims of the Asserted Patents – and throughout the United States including this Judicial District.

15.     Defendants are registered Texas Foreign For-Profit Corporations currently doing business in this Judicial District. Defendants have purposefully availed themselves of the privilege of conducting business with residents of this Judicial District, have purposefully reached out to residents of this Judicial District, and have established sufficient minimum contacts with the State of Texas such that they should reasonably and fairly anticipate being haled into court in Texas and this Judicial District.

16.     Personal jurisdiction over Defendants is proper in this Court because Defendants (a) are registered to do business in Texas with registered agents located in Texas incident to such registrations; (b) maintain numerous brick and mortar stores in Texas; (c) maintain their principal corporate office in Texas; (d) have minimum contacts with the State of Texas; and (e) have purposefully availed themselves of the privileges of conducting business in the State of Texas.

17.     Venue in this Judicial District is proper under 28 U.S.C. §§ 1391(b), (c) and 28 U.S.C. § 1400(b) because Defendants reside in this Judicial District and/or have committed acts of infringement and have a regular and established place of business.

## THE ACCUSED PRODUCTS

18.     Defendants have infringed certain claims of the Asserted Patents through the manufacture, sale, offer for sale, advertisement, importation, shipment, distribution, and/or use of Defendants' protective masks for mobile devices (the "Accused Products").

19.     As presently advised, the Accused Products include at least the following categories of protective masks for mobile devices ("Case Styles") with the "Carson & Quinn" and "CQ X Carson & Quinn" brand names: Bolt; Clear (Florals, Geometrics, Geo Foil, Glitter, Magnetic, MagSafe, Pattern); Leather; Silicone (MagSafe); Florals; and Black. (See Exhibit D and Exhibit E; https://www.att.com/, https://www.carsonandquinn.com/, and related urls in the att.com and carsonandquinn.com domains).

20.     As presently advised, the Accused Products include protective masks for at least the following mobile devices: Apple iPhone 6s; Apple iPhone 7; Apple iPhone 8; Apple iPhone X; Apple iPhone XR; Apple iPhone XS; Apple iPhone 11; Apple iPhone 11 Pro; Apple iPhone SE 2nd gen (2020); Apple iPhone 12; Apple iPhone 12 Mini; Apple iPhone 12 Pro; Apple iPhone 12 Pro Max; Apple iPhone 13; Apple iPhone 13 Mini; Apple iPhone 13 Pro; Apple iPhone 13 Pro Max; Apple iPhone SE 3rd gen (2022); Apple iPhone 14; Apple iPhone 14 Plus; Apple iPhone 14 Pro; Apple iPhone 14 Pro Max; Google Pixel 4a 5G; Google Pixel 5; LG K92 5G; LG Phoenix 5; LG Velvet 5G; LG V60 ThinQ 5G; Motorola motorola one 5G; Samsung Galaxy A01; Samsung Galaxy A11; Samsung Galaxy A32 5G; Samsung Galaxy A51; Samsung Galaxy A51 5G; Samsung Galaxy A71 5G; Samsung Galaxy Note20 5G; Samsung Galaxy Note20 Ultra 5G; Samsung Galaxy S20 5G; Samsung Galaxy S20+ 5G; Samsung Galaxy S20 Ultra 5G; Samsung Galaxy S20 FE 5G; Samsung Galaxy S21 5G; Samsung Galaxy S21 FE 5G; Samsung Galaxy S22; Samsung Galaxy S22+; Samsung Galaxy S22 Ultra; Samsung Galaxy Z Flip3 5G; and Samsung Galaxy Z Fold2 5G. (See Exhibit D and Exhibit E; https://www.att.com/,

https://www.carsonandquinn.com/, and related urls in the att.com and carsonandquinn.com domains).

21.    The Accused Products also include a smaller subset of protective masks for mobile devices consisting of two portion cases (herein referred to as the "Two Portion Accused Products"). See Exhibit E for a detailed list and exemplary photos of the Two Portion Accused Products. For avoidance of doubt, the Two Portion Accused Products in Exhibit E are a smaller subset of the Accused Products in Exhibit D and are included in and a part of the Accused Products. All Accused Products are alleged to infringe at least independent Claim 9 of the '195 Patent and independent Claims 1, 5, 8, and 9 of the '676 Patent. In addition to these claims, the Two Portion Accused Products are alleged to additionally infringe at least independent Claims 1, 6, and 9 of the '291 Patent and independent Claims 1 and 6 of the '195 Patent.

22.    The Accused Products, as illustrated below, are those protective masks that are capable of being coupled to a portion of a mobile device so that the mobile device will not fall out of the protective mask. The Accused Products are those protective masks that comprise a flange or retainer (as recited in the asserted claims, *infra*). Upon information and belief, such a flange is indicated by the marking(s) in the illustrations hereinbelow. The Accused Products also may use flange(s) or retainer(s) in conjunction with substantial surface to surface contact by the inner surface of the protective mask which conforms to the contour of the outer surface of the mobile device, working together to provide non-permanent, temporary protection to the mobile device. While not required by all asserted claims, the Accused Products are protective masks that include openings to allow access to the interface as well as inputs and outputs, as well as protective masks that have patterns, nameplates, type, text, or graphic elements. See Exhibit D and Exhibit E for

exemplary photos for all categories of Defendants' Case Styles. Below are pictures of a representative Accused Product.



















Carson & Quinn Leather Case - iPhone 11: https://www.att.com/buy/accessories/Cases/carson-quinn-leather-case-black-iphone-11.html                                                    and

https://web.archive.org/web/20200211182635/https://www.att.com/buy/accessories/cases/carson-quinn-leather-case-black-iphone-11.html (See Exhibit D and pictures of representative products).

23.    The Accused Products subject to this Complaint include all substantively similar products and any predecessor and/or successor versions that satisfy each limitation of, and therefore infringed, any asserted claim of the Asserted Patents whether sold directly or via other online marketplaces or brick and mortar retail stores.

24.    After adequate discovery, BelAir may seek leave to amend this Complaint to include additional details of infringement, if any, by other products hereafter discovered to infringe the Asserted Patents.

## INFRINGEMENT BY DEFENDANTS

### COUNT I: INFRINGEMENT OF UNITED STATES PATENT NO. 7,194,291

25.    Plaintiff BelAir realleges and incorporates by reference paragraphs 1 through 24, inclusive, as though fully set forth herein.

26.    Defendants directly infringed at least independent Claims 1, 6, and 9 of the '291 Patent (prior to its expiration on or about November 16, 2022).

## CLAIM 1

27.    The Two Portion Accused Products, as manufactured, sold, offered for sale, advertised, imported, shipped, distributed, and/or used by Defendants, comprised a protective mask adapted to be coupled to an exterior housing of a mobile phone having internal components including circuitry and a battery, which are covered by the exterior housing, in accordance with the limitations of Claim 1 of the '291 Patent.

28.    Specifically, the Two Portion Accused Products, comprised:

a.    first mask portion, molded to conform to the shape of a first portion of the exterior housing of the mobile phone, the first mask portion having flanges to couple the first mask portion to the exterior housing of the mobile phone to retain the first mask portion to the first portion of the exterior housing so that the first mask portion covers the first portion of the exterior housing of the mobile phone; and;

b.    a second mask portion, molded to conform to the shape of a second portion of the exterior housing of the mobile phone, the second mask portion adapted to be coupled to the mobile phone to retain the second mask portion to the second portion of the exterior housing so that the second mask portion covers the second portion of the exterior housing of the mobile phone;

c.    wherein said first and second mask portions are retained to the exterior housing of the mobile phone.

29.    As presently advised, one or more Two Portion Accused Products also likely satisfied the limitations of, and infringed, dependent Claims 2, 3, 4, and 5 of the '291 Patent.

## CLAIM 6

30.    The Two Portion Accused Products, as manufactured, sold, offered for sale, advertised, imported, shipped, distributed, and/or used by Defendants, comprised a protective mask adapted to be coupled to an exterior housing of a mobile phone, the mobile phone having internal components including circuitry and a battery, which are covered by the exterior housing, in accordance with the limitations of Claim 6 of the '291 Patent.

31.    Specifically, the Two Portion Accused Products comprised:

a.    a[] first mask portion, molded to conform to the shape of a first portion of the exterior housing of the mobile phone, the first mask portion having flanges to couple the first mask portion to the exterior housing of the mobile phone to retain the first mask portion to the first portion of the exterior housing so that the first mask portion covers the first portion of the exterior housing of the mobile phone;

b.    said first mask portion including an opening that is associated with an opening in the exterior housing to permit access to a feature of the mobile phone; and

c.    a second mask portion, molded to conform to the shape of a second portion of the exterior housing of the mobile phone, the second mask portion adapted to be coupled to the mobile phone to retain the second mask portion to the second portion of the exterior housing so that the second mask portion covers the second portion of the exterior housing of the mobile phone;

d.    wherein said first and second mask portions are retained to the exterior housing of the mobile phone.

32.    As presently advised, one or more Two Portion Accused Products also likely satisfied the limitations of, and infringed, dependent Claims 7 and 8 of the '291 Patent.

**CLAIM 9**

33.    The Two Portion Accused Products, as manufactured, sold, offered for sale, advertised, imported, shipped, distributed, and/or used by Defendants, comprised a protective mask adapted to be coupled to an exterior housing of a mobile phone, the mobile phone having internal components including circuitry and a battery, which are covered by the exterior housing, in accordance with the limitations of Claim 9 of the '291 Patent.

34.    Specifically, the Two Portion Accused Products comprised:

a.    a[] first mask portion, molded to conform to the shape of a first portion of the exterior housing of the mobile phone, the first mask portion having a flange to couple the first mask portion to the exterior housing of the mobile phone to retain the first mask portion to the first portion of the exterior housing so that the first mask portion covers the first portion of the exterior housing of the mobile phone;

b.    the first mask portion including an opening that is associated with an opening in the exterior housing to permit access to a feature of the mobile phone;

c.    a second mask portion, molded to conform to the shape of a second portion of the exterior housing of the mobile phone, the second mask portion adapted to be coupled to the housing of the mobile phone to retain the second mask portion to the second portion of the exterior housing so that the second mask portion covers the second portion of the exterior housing of the mobile phone; and

d.    the second mask portion includes an opening that is associated with an opening in the exterior housing to permit access to a feature of the mobile phone.

35.    As presently advised, one or more Two Portion Accused Products also likely satisfied the limitations of, and infringed, dependent Claim 10 of the '291 Patent.

36.    To the extent required by law, BelAir has complied with the provisions of 35 U.S.C. § 287. Further, in instances wherein BelAir has granted rights to third parties prior to expiration of the '291 Patent, BelAir is not aware of any such third party failing to comply with its respective marking obligation prior to expiration of the '291 Patent.

37.    Defendants' direct infringement as described above, either literally or under the doctrine of equivalents, has injured BelAir and BelAir is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

**COUNT II: INFRINGEMENT OF UNITED STATES PATENT NO. 7,941,195**

38.    Plaintiff BelAir realleges and incorporates by reference paragraphs 1 through 24, inclusive, as though fully set forth herein.

39.    Defendants directly infringed at least independent Claims 1, 6, and 9 of the '195 Patent (prior to its expiration on or about November 16, 2022).

**<u>CLAIM 1</u>**

40.    The Two Portion Accused Products, as manufactured, sold, offered for sale, advertised, imported, shipped, distributed, and/or used by Defendants, comprised a protective mask adapted to be coupled to an exterior housing of a mobile phone having internal components including circuitry and a battery, which are covered by the exterior housing, in accordance with the limitations of Claim 1 of the '195 Patent.

41.    Specifically, the Two Portion Accused Products comprised:

    a.    a first mask portion, molded to conform to the shape of a first portion of the exterior housing of the mobile phone, the first mask portion adapted to be coupled to the mobile phone to retain the first mask portion to the first portion of the exterior housing so that the first mask portion covers the first portion of the exterior housing of the mobile phone; and

    b.    a second mask portion, molded to conform to the shape of a second portion of the exterior housing of the mobile phone, the second mask portion adapted to be coupled to the mobile phone to retain the second mask portion to the second portion of the exterior housing so that the second mask portion covers the second portion of the exterior housing of the mobile phone;

    c.    wherein said first and second mask portions are retained to the exterior housing of the mobile phone.

42.    As presently advised, one or more Two Portion Accused Products also likely satisfied the limitations of, and infringed, dependent Claims 2, 3, 4, and 5 of the '195 Patent.

## **CLAIM 6**

43.    The Two Portion Accused Products, as manufactured, sold, offered for sale, advertised, imported, shipped, distributed, and/or used by Defendants, comprised a protective mask adapted to be coupled to an exterior housing of a mobile phone having internal components including circuitry and a battery, which are covered by the exterior housing, in accordance with the limitations of Claim 6 of the '195 Patent.

44.    Specifically, the Two Portion Accused Products comprised:

    a.    a first mask portion, molded to conform to the shape of a first portion of the exterior housing of the mobile phone, the first mask portion is adapted to be coupled to the mobile phone to retain the first mask portion to the first

portion of the exterior housing so that the first mask portion covers the first portion of the exterior housing of the mobile phone;

b.    said first mask portion including an opening that is associated with an opening in the exterior housing to permit access to a feature of the mobile phone; and

c.    a second mask portion, molded to conform to the shape of a second portion of the exterior housing of the mobile phone, the second mask portion adapted to be coupled to the mobile phone to retain the second mask portion to the second portion of the exterior housing so that the second mask portion covers the second portion of the exterior housing of the mobile phone;

d.    wherein said first and second mask portions are retained to the exterior housing of the mobile phone.

45.    As presently advised, one or more Two Portion Accused Products also likely satisfied the limitations of, and infringed, dependent Claims 7 and 8 of the '195 Patent.

## **CLAIM 9**

46.    All Accused Products, as manufactured, sold, offered for sale, advertised, imported, shipped, distributed, and/or used by Defendants, comprised a protective mask adapted to be coupled to an exterior housing of a mobile phone having internal components including circuitry and a battery, which are covered by the exterior housing, in accordance with the limitations of Claim 9 of the '195 Patent.

47.    Specifically, all Accused Products comprised:

a.    a first mask portion, molded to conform to the shape of a first portion of the exterior housing of the mobile phone; and

     b.     the first mask portion having flanges to allow the first mask portion to be coupled to the mobile phone to retain the first mask portion to the first portion of the exterior housing so that the first mask portion covers the first portion of the exterior housing of the mobile phone.

48.     As presently advised, one or more Two Portion Accused Products and also likely satisfied the limitations of, and infringed, dependent Claims 10, 11, and 12 of the '195 Patent.

49.     To the extent required by law, BelAir has complied with the provisions of 35 U.S.C. § 287. Further, in instances wherein BelAir has granted rights to third parties prior to expiration of the '195 Patent, BelAir is not aware of any such third party failing to comply with its respective marking obligation prior to expiration of the '195 Patent.

50.     Defendants' direct infringement as described above, either literally or under the doctrine of equivalents, has injured BelAir and BelAir is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

**COUNT III: INFRINGEMENT OF UNITED STATES PATENT NO. 10,097,676**

51.     Plaintiff BelAir realleges and incorporates by reference paragraphs 1 through 24, inclusive, as though fully set forth herein.

52.     Defendants directly infringed at least independent Claims 1, 5, 8, and 9 of the '676 Patent (prior to its expiration on or about October 23, 2021).

<u>**CLAIM 1**</u>

53.     All Accused Products, as manufactured, sold, offered for sale, advertised, imported, shipped, distributed, and/or used by Defendants, comprised a protective mask molded for frictional retention to an exterior housing of a mobile phone having user input and output interfaces, and internal components including circuitry and a battery, wherein the exterior housing completely encloses the circuitry and the battery when the mobile phone is fully assembled and ready for use,

the exterior housing having an exterior shape formed by a back surface, and at least portions of opposed side surfaces, in accordance with the limitations of Claim 1 of the '676 Patent.

54.    Specifically, all Accused Products comprised:

a.    an integrally-formed mask body molded and contoured to conform and frictionally-fit tightly against the exterior shape of the exterior housing;

b.    an inner surface of the integrally-formed mask body defining an interior space of the integrally-formed mask body and conforming to and in substantially continuous surface-to-surface contact with the exterior shape of the exterior housing, with no substantial space between the inner surface of the integrally-formed mask body and the exterior shape of the exterior housing;

c.    at least one opening defined by the integrally-formed mask body permitting user access to at least the user input and output interfaces; and

d.    at least one retainer having an extension protruding laterally inward from the integrally-formed mask body and toward and into the integrally-formed mask body interior space, wherein the at least one retainer is retained to the exterior housing at an exterior housing edge when the mask is coupled to the mobile communication device, the at least one retainer participating in retaining the integrally-formed mask body to the mobile communication device.

55.    As presently advised, one or more Accused Products also likely satisfied the limitations of, and infringed, dependent Claims 2, 3, and 4 of the '676 Patent.

## CLAIM 5

56.    All Accused Products, as manufactured, sold, offered for sale, advertised, imported, shipped, distributed, and/or used by Defendants, comprised a protective mask molded for frictional retention to an exterior housing of, and adapted to be coupled to, a mobile communication device having internal components including circuitry and a battery, wherein the exterior housing completely encloses the circuitry and battery when the mobile communication device is fully assembled and ready for use, and wherein the exterior housing has an exterior shape including a back face and at least portions of opposed side surfaces, in accordance with the limitations of Claim 5 of the '676 Patent.

57.    Specifically, all Accused Products comprised:

a.    an integrally-formed mask body molded and contoured to conform and frictionally fit to the exterior shape of the exterior housing;

b.    an inner surface of the integrally-formed mask body defining an interior space of the integrally-formed mask body and conforming to and in substantially continuous surface-to-surface contact with the exterior shape of the exterior housing in overlying and protecting relationship, without a substantial gap between the inner surface of the integrally-formed mask body and the exterior shape of the exterior housing, the integrally-formed mask body defining an opening enabling the mask to be placed over the exterior shape in overlying and protecting relationship; and

c.    at least one retainer having an extension protruding laterally inward from the integrally-formed mask body and toward and into the integrally-formed mask body interior space, wherein the at least one retainer is retained to the exterior housing at an exterior housing edge when the mask is coupled to

the mobile communication device, the at least one retainer participating in retaining the integrally-formed mask body to the mobile communication device.

58.    As presently advised, one or more Accused Products also likely satisfied the limitations of, and infringed, dependent Claims 6 and 7 of the '676 Patent.

**<u>CLAIM 8</u>**

59.    All Accused Products, as manufactured, sold, offered for sale, advertised, imported, shipped, distributed, and/or used by Defendants, comprised a mask for attachment to a hand-held mobile phone, the mobile phone having user input and output interfaces, internal components including circuitry and a battery, and an exterior housing completely enclosing the circuitry and battery when the mobile phone is fully assembled and ready for use, the exterior housing including a first face, a second face and opposed side surfaces there between, in accordance with the limitations of Claim 8 of the '676 Patent.

60.    Specifically, all Accused Products comprised:

a.    an integrally-formed mask body molded to conform to a shape of the exterior housing;

b.    inner and outer surfaces, the surfaces defining at least one opening in the integrally-formed mask body providing access to at least one of the user input and output interfaces, the integrally-formed mask body being configured such that, when the mask is attached to the mobile phone, the integrally-formed mask body is coextensive with, contours to and overlies the opposed side surfaces, with substantially no space between the mask body and the opposed side surfaces; and

c.    at least one retainer having an extension protruding laterally inward from the integrally-formed mask body and toward and into the integrally-formed mask body interior space, wherein the at least one retainer is retained to the exterior housing at an exterior housing edge when the mask is coupled to the mobile communication device, the at least one retainer participating in retaining the integrally-formed mask body to the mobile communication device.

## CLAIM 9

61.    All Accused Products, as manufactured, sold, offered for sale, advertised, imported, shipped, distributed, and/or used by Defendants, comprised a protective mask molded for frictional retention to an exterior housing of a fully assembled mobile communication device having user input and output interfaces, the mobile communication device further having internal components including circuitry and a battery completely enclosed by the exterior housing, and the exterior housing having an exterior shape formed by a back surface and at least portions of opposed side surfaces, in accordance with the limitations of Claim 9 of the '676 Patent.

62.    Specifically, all Accused Products comprised:

a.    an inner surface closely conforming to the exterior shape of the exterior housing and in substantially continuous surface-to-surface contact with the exterior shape of the exterior housing, with substantially no space between the inner surface of the protective mask and the exterior shape when the protective mask is retained to the exterior housing, the protective mask being molded, integrally formed, contoured and sized to fit tightly against the exterior shape of the exterior housing, thereby providing retention of the protective mask to the exterior housing;

      b.      at least one opening defined by the protective mask permitting user access to at least the user input and output interfaces; and

      c.      at least one retainer having an extension protruding laterally inward from the integrally-formed mask body and toward and into the integrally-formed mask body interior space, wherein the at least one retainer is retained to the exterior housing at an exterior housing edge when the mask is coupled to the mobile communication device, the at least one retainer participating in retaining the integrally-formed mask body to the mobile communication device.

63.     As presently advised, one or more Accused Products also likely satisfied the limitations of, and infringed, dependent Claims 10, 11, and 12 of the '676 Patent.

64.     To the extent required by law, BelAir has complied with the provisions of 35 U.S.C. § 287. Further, in instances wherein BelAir has granted rights to third parties prior to expiration of the '676 Patent, BelAir is not aware of any such third party failing to comply with its respective marking obligation prior to expiration of the '676 Patent.

65.     Defendants' direct infringement as described above, either literally or under the doctrine of equivalents, has injured BelAir and BelAir is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

## PRAYER FOR RELIEF

A.     WHEREFORE, Plaintiff BelAir Electronics, Inc. respectfully requests this Court to enter judgment against Defendants AT&T Inc. and AT&T Services, Inc. – and against each of their subsidiaries, successors, parents, affiliates, officers, directors, agents, servants, employees, and all persons in active concert or participation with them – granting the following relief:

B.     The entry of judgment in favor of Plaintiff and against Defendants;

C.      An award of damages against Defendants adequate to compensate Plaintiff for the infringement that occurred from at least December 17, 2019, through expirations of the Asserted Patents, but in no event less than a reasonable royalty as permitted by 35 U.S.C. § 284, together with prejudgment interest from the date infringement began; and

D.      Such other relief to which Plaintiff is entitled under the law and any other and further relief that this Court or a jury may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues presented in this Complaint.

Dated: December 17, 2025                Respectfully submitted,

                                        */s/ Timothy J. Haller*
                                        Timothy J. Haller 3125265(IL)
                                        HALLER LAW PLLC
                                        230 E Delaware Pl, Ste 5E
                                        Chicago, IL 60611
                                        Phone: (630) 336-4283
                                        haller@haller-iplaw.com

                                        ***Attorney for Plaintiff,***
                                        ***BelAir Electronics, Inc.***